IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERNEST DAVIS, JR.,**           CASE NO. 2:12-CV-0098

    **Petitioner,**

v.                               JUDGE MICHAEL H. WATSON
                                 Magistrate Judge Kemp
**WARDEN, ROSS**
 **CORRECTIONAL INSTITUTION,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner Ernest Davis, Jr., a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This case is before the Court on the petition, the Return of Writ (with exhibits), and petitioner' reply. For the following reason, it will be recommended that the petition be denied.

### I. PROCEDURAL HISTORY

The September, 2008 term of the Franklin County, Ohio grand jury returned a thirty-count indictment against petitioner, charging him with one count of burglary, seven counts of kidnaping, seven counts of aggravated robbery, fourteen counts of robbery, and one count of having a weapon while under a disability. Many of the counts contained specifications as well. *See Return of Writ*, Exhibit One.

Petitioner was, on motion of his counsel, subsequently referred for a competency evaluation, and was found competent to stand trial. On July 17, 2009, a jury found him guilty on nine counts (the State dismissed the other 21 counts at the close of the State's

case), and on September 2, 2009, he was sentenced to a total of 37 years in prison. *Return of Writ*, Exhibit Six.

Through counsel, petitioner timely appealed his conviction and sentence to the Tenth District Court of Appeals. He asserted only one assignment of error, as follows:

**ASSIGNMENT OF ERROR 1**: APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*Return of Writ*, Exhibit Eight. In an opinion filed on September 30, 2010, the state court of appeals overruled petitioner's assignment of error and affirmed the lower court's judgment. *Return of Writ*, Exhibit 10; *State v. Davis.*, 2010 WL 3834538 (Franklin Co. App. September 30, 2010).

Petitioner, acting *pro se*, appealed that decision to the Ohio Supreme Court. In his memorandum in support of jurisdiction, petitioner raised the same issue concerning ineffective assistance of trial counsel. The Ohio Supreme Court declined to accept the case for review. *Return of Writ*, Exhibit 14; *State v. Davis*, 127 Ohio St.3d 1535 (February 2, 2011).

During this same time period, petitioner filed a *pro se* motion to reopen his appeal, arguing that his appellate counsel was ineffective for failing to supplement the record and to raise additional issues on appeal. In a decision dated March 8, 2011, the state court of appeals denied the application. *Return of Writ*, Exhibit 17; *State v. Davis*, 2011 WL 794534 (Franklin Co. App. March 8, 2011). Petitioner did not appeal that

decision to the Ohio Supreme Court.

On February 29, 2012, petitioner timely filed his petition for a writ of habeas corpus. He asserts one ground for relief:

> **Ground One:** PETITIONER IS BEING HELD IN VIOLATION OF HIS 5TH, 6TH, AND 14TH AMENDMENT RIGHT TO HAVE COUNSEL FOR HIS DEFENSE.
>
> **Supporting Facts:** Trial Counsel Rendered Ineffective Assistance by: (1) Failing to Investigate and Subpoena Several Alibi or Other Witnesses; (2) Failing to Investigate a Robbery of Petitioner, Which Occurred the Day Prior to the Alleged Crimes Petitioner Stands Convicted of, and Performed by the Alleged Victims, or to Subpoena a Video Tape of the Same; (3) Failing to Effectively Cross-examine the State's Witnesses as to Their Criminal Background or Their Participation in the Robbery of Petitioner the Prior Day; and (4) Denying Petitioner the Right to Testify at Trial.

It is Respondent's position that this claim is without merit.

## II. THE FACTS

The basic facts of the case are recited in the state court of appeals decision. This Court is generally bound to accept those facts as true for purposes of this action. *See* 28 U.S.C. §2254(d)(1). They are as follows:

> {¶ 2} On Thanksgiving day 2008, three men unexpectedly stormed into the home of Angela Williams, located at 2296 Hamilton Avenue, in Franklin County, Ohio. Inside the home were Angela Williams, Passion Williams, Michael Williams, Latasha Williams, Henry Chapman, Antoinette Sutton, Steve Mix, and three small children. The men held Angela and her family at gunpoint and demanded money. The men tied up the adults and forced everyone into the back of a van. One of the men, later identified by witnesses as the defendant, drove the seven adults and three small children around in the van for several hours, threatening them and demanding money before eventually releasing them in an alley near

Angela's home.

{¶ 3} On December 4, 2008, defendant was indicted by the grand jury on a 30-count indictment involving various counts of aggravated burglary, aggravated robbery, robbery, kidnapping, and having a weapon while under disability. The charges arose out of the Thanksgiving day incident. The matter proceeded to trial on July 14, 2009.

{¶ 4} At trial, the State of Ohio introduced the testimony of all seven adult witnesses, as well as two Columbus police officers and one detective. Defendant did not present any witnesses. The testimony presented at trial established the following.

{¶ 5} Two unidentified armed men ran into the Williams' home on Thanksgiving day, followed by defendant, who was also armed. Defendant was not wearing a mask and did not have his face covered in any way. Passion recognized defendant. She had become acquainted with defendant about one month prior to the incident and knew defendant as "E." At a later point in time, Passion informed her family that she knew defendant.

{¶ 6} Defendant demanded money from the family and threatened to shoot them if they did not cooperate. The two other men assisted defendant in tying up all of the adults using gray duct tape, red tape, and rope. The children were not bound. However, everyone was forced outside into a white work van. The other men left, but defendant drove the family around in the van for several hours. Defendant took them on the freeway as well as to a wooded area and may have driven as far as Delaware, Ohio. Defendant stopped twice for gas, during which time he talked on his cell phone. Defendant continued to threaten the family and to demand that the family give him $5,000.

{¶ 7} Eventually, after instructing the family not to contact the police, defendant un-tied and/or un-taped the family members and released them one at a time into an alley near Angela's home. The family quickly returned home but was unable to locate a cell phone inside the house, so Passion called the police using a nearby pay phone. The police responded to investigate, interview the witnesses and present a photo array containing a photo of defendant. All seven adults identified defendant as the man who stormed into their home, threatened them, demanded money from them, held them at gunpoint, and drove them around in a

4

van for several hours. All seven witnesses also made an in-court identification of defendant. In addition, Antoinette testified she recognized defendant as a friend of Passion's named "E." Passion testified she had previously ridden in defendant's van and recognized it as his van.

*2 {¶ 8} The testimony further established that during the investigation, the police recovered from the alley some of the red tape, rope, and a cord used to bind the kidnapping victims. In the hours after the incident, police located defendant's white work van outside his residence, located at 1157 Fair Avenue. Upon searching the van, police located a small child's camouflaged jacket which Passion identified as the jacket her son Philip had with him on the day of the kidnapping. Inside the van, police also located some duct tape and some red tape which looked like the red tape used to restrain the Williams family members, along with several live .40 caliber rounds. Photos were taken of the crime scenes and the victims. A few photos depicted the tape residue that remained on the hands of some of the adult victims.

*State v. Davis.*, 2010 WL 3834538, *1-2.

### III. PETITIONER'S CLAIM

There are four sub-parts to petitioner's claim that his trial counsel was constitutionally ineffective. Before turning to an analysis of that claim, the Court sets forth the legal standard under which his claim will be reviewed.

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam ). *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(footnote omitted) .

5

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S.Ct. 261, **1 (2011), *quoting Harrington v. Richter,* 562 U.S. ----, ----, 131 S.Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v.*

6

*Richter*, 131 S.Ct. at 786 (*quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

All of petitioner's claims assert that his trial counsel failed to represent him adequately at trial. It is well-established that the right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

7

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697. This is the legal test used by the state court of appeals, so the only question raised by the petition is whether the *Strickland* test was applied unreasonably by that court.

### A. Alibi Witnesses

The state court of appeals rejected petitioner's claim concerning his counsel's failure to call alibi witnesses for several reasons. The primary reason was that "defendant has not pointed to anything in the record which would reveal what, if anything, appellant's alleged alibi witnesses, who are not named, would have said if they had been called to testify" and that without a specific showing that such testimony would have assisted him in his defense, he could not satisfy the prejudice prong of the *Strickland* test. *State v. Davis, supra*, at *4. The witnesses were allegedly unnamed people at a Kroger store who might have seen petitioner in the store on the day in question. As the court of appeals also noted, "defendant did not provide any more specific information about the location of this Kroger's, such as its proximity or lack thereof to the route of travel of the van during the kidnapping, or the time at which he

8

allegedly would have been seen. It is unknown whether these alleged witnesses would in fact rebut the testimony of the State's witnesses." *Id*.

The conclusion that, on the state of this record, petitioner showed no prejudice from his attorney's failure to call alibi witnesses is a reasonable one. An explanation of what such witnesses "might have said, [and] how they might have altered the outcome of [the] trial is, simply put, a necessary showing for a petitioner who would like to assert ineffective assistance of counsel." *Rose v. Anderson,* 2009 WL 1212478, *5 (N.D. Ohio April 30, 2009). As one Court of Appeals has noted, "if the potential witnesses are not called, it is incumbent on the petitioner to explain their absence and to demonstrate, with some precision, the content of the testimony they would have given at trial." *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987). Given this state of the federal law, the state court of appeals could hardly have acted unreasonably when it denied petitioner's claim regarding potential alibi witnesses for essentially the same reason.

In his traverse, petitioner does not take issue with the proposition that if the record really was devoid of evidence of the nature of his alibi defense, the state court of appeals reasonably rejected his claim. However, he argues that the record contained that evidence because it was described in a motion for leave to file a motion for a new trial (*see Return of Writ*, Exhibit 5). That motion does not provide much additional detail as to the content of the alleged alibi witnesses' testimony, however; it simply states that "Wendel Davis, Christian Robinson, Rocky Robinson and the Hill Family were all ready

9

to testify on his behalf" but that, despite being asked to do so, defense counsel did not subpoena them. The trial court apparently never ruled on this motion, so an actual motion for a new trial was never filed. The failure to grant the motion was not assigned as error on appeal. The state court of appeals had no reason to consider this motion in making its decision; even if it had, the motion is no more specific about the content of the alibi witnesses' testimony than the appellate brief. Respondent is correct that the only way that evidence of their anticipated testimony could have properly been brought to the attention of the trial court, and then the appellate court, was through a petition for post-conviction relief filed under Ohio Rev. Code §2953.21, and that one was never filed.

Petitioner has responded to this argument by claiming that any post-conviction petition would likely have been barred by the doctrine of *res judicata*. That is not correct. Ohio court decisions make it clear that if a claim of ineffective assistance of trial counsel depends upon evidence that is not part of the trial record, and such a claim is raised in a post-conviction action, it will be considered on its merits. For example, in *State v. Speed*, 2005 WL 2046417, *2 (Cuyahoga Co. App. August 25, 2005), the Eighth District Court of Appeals said that

> If an ineffective assistance of counsel claim concerns facts that are outside the record, an appellate court cannot consider the claim on direct appeal because a court can only consider matters contained in the record. *State v. Smith* (1985), 17 Ohio St.3d 98, 101, fn. 1, 477 N.E.2d 1128 Therefore, *res judicata* does not bar a defendant from raising an ineffective assistance of counsel claim in a petition for postconviction relief if the claim is based upon evidence outside the record. This principle applies even though the

10

> issue of ineffective assistance of counsel was raised on direct appeal relating to matters that were in the record.

That case, like this one, involved a claim that trial counsel was ineffective for failing to call an alibi witness, and the court of appeals reversed the trial court's denial of a post-conviction petition on *res judicata* grounds because the substance of the alibi witness' testimony was "not part of the record [so that] the matter could not have been raised on direct appeal because it involved matters outside the record." *Id*. at *3, *citing State v. Perry*, 10 Ohio St. 2d 175 (1967). Similar claims have been considered and decided on their merits in the Franklin County courts. *See, e.g., State v. Monroe*, 2005 WL 2403957, *11 (Franklin Co. App. Sept. 30, 2005). It is far too late for petitioner to return to the state courts to raise this issue, because there is a 180-day time limit for filing post-conviction petitions which begins to run on the date that the transcript is filed in the state court of appeals. Ohio Rev. Code §2953.21(A)(2). Therefore, the court of appeals correctly limited its discussion of this issue to the record at trial, and, as this Court has held, did not apply *Strickland* unreasonably to the facts as they appeared in that record.

### B. The Other Robbery

Petitioner's second disagreement with trial counsel's strategy deals with the fact that petitioner was allegedly robbed by two of the victims, Michael Williams and Steve Mix, on the day before the incident for which petitioner was convicted. However, counsel did not bring this fact out on cross-examination, nor did he subpoena a videotape which, according to petitioner, would have shown details of the alleged

11

robbery. The state court of appeals rejected this claim for two independent reasons; first, like the alibi witness claim, the record did not support petitioner's assertion that such evidence actually existed ("defendant has pointed to nothing in the record which references this [robbery]"), and, second, "even assuming, for the sake of argument, that this allegation is true, this event would not change the testimony presented by the State's witnesses as to what occurred on Thanksgiving day." *State v. Davis, supra*, at *6. As a result, the state court concluded that "defendant has failed to demonstrate how he was prejudiced by this [alleged failure]." *Id*.

The latter observation is not unreasonable. As described earlier, all seven adult victims of the kidnaping identified petitioner as the man who forced them into the van and drove them around for several hours. Two of them - not Michael Williams or Steve Mix - knew petitioner, and he was not masked or otherwise disguised on the day in question. Other evidence linked his van to the kidnaping. Whether two of the victims had tried to rob him the day before not only would not have had any influence on the jury's decision to credit the evidence against him, it might also have led the jury to conclude that he had a motive for the Thanksgiving Day robbery. The state court therefore did not act unreasonably in rejecting this claim.

As with his first claim, petitioner argues that the record did contain evidence of this prior robbery, or at least a reference to it and to a DVD from the crime scene (the Yin Yu restaurant), so that the court of appeals should not have resolved the claim based on the absence of such evidence. Given that the reference to the evidence of the

robbery was also in the motion for leave to file a motion for a new trial, the same reasoning applies here as to why the court of appeals was not required to consider this evidence. Further, the court of appeals ruled, alternatively, that even if there was such evidence, its presence would not have affected the jury's verdict. Although petitioner claims that his entire defense should have been founded upon the argument that all of the victims simply made up the story because of their participation in the prior day's robbery, his counsel was faced with the difficult task of persuading the jury that all seven adult eyewitnesses had fabricated the story - a group which included at least four people not involved in the prior robbery - and that all of the evidence that the kidnaping had occurred, including cord and tape in the alley where the victims were released and similar tape in petitioner's van, along with one of the child victim's jacket in his van - was somehow planted or fabricated. The Court continues to believe that the court of appeals reasonably determined that the substantial evidence against petitioner made it extremely unlikely that, even had the jury been told of the alleged robbery the day before, it would have reached a different verdict. Again, that is enough to require that the state court decision be upheld.

### C. The Cross-Examination of Williams and Mix

Petitioner's third instance of alleged ineffective assistance of counsel asserts that counsel was ineffective for failing to impeach Mr. Williams and Mr. Mix with evidence of their criminal records and failing to address their credibility during closing argument. However, as the state court of appeals noted, the prosecuting attorney

13

brought out the substance of both witnesses' criminal history on direct examination. As that court then held,

> Given that the prosecution elicited this testimony from its own witnesses and thus the jury was already aware of the criminal backgrounds of these witnesses, and given that Evid.R. 609 would have likely restricted counsel from probing further into issues involving the witnesses' criminal histories and convictions, counsel was not ineffective in failing to further explore these issues. Furthermore, the record indicates that defense counsel did remind the jurors, during closing arguments, of the witnesses' criminal backgrounds and thus questioned their credibility. Moreover, the jury instructions contained language instructing the jury that they were permitted to consider a witness' prior convictions in assessing the credibility and truthfulness of the witness' testimony. Thus, we do not find counsel to have been ineffective with respect to his cross-examination and impeachment efforts.

*State v. Davis, supra*, at *6. Little extended discussion of this issue is needed. It is fair to say that any additional questioning of these witnesses as to their criminal histories (if, in fact, the trial judge would have allowed it) would have produced only cumulative testimony. Federal courts consistently reject claims of ineffective assistance of counsel based on the failure to develop cumulative testimony. *See, e.g., U.S. v. Munoz,* 605 F.3d 359, 379-80 (6th Cir. May 18, 2010) ; *see also Perkins v. McKee,* 411 Fed.Appx. 822, 826-27 (6th Cir. Feb. 14, 2011). The state court's decision on this issue is therefore consistent with federal law rather than an unreasonable application of it.

### D. Failure to Call Petitioner as a Witness

Petitioner's final claim is that his counsel was ineffective for failing to call him as a witness. He does not address this claim in his traverse and the petition provides no detail of the claim, so the Court assumes that the substance of this claim is identical to

14

the way in which it was presented to the state court of appeals. That court had little trouble dismissing the claim based on the fact that it was petitioner himself who told the trial judge he did not want to testify. The record cited by the court of appeals fully supports this finding:

> THE COURT: Back on the record with Mr. Davis. Mr. Davis, have you had enough time now to discuss this matter, further discuss this matter with your attorney?
>
> THE DEFENDANT: I have.
>
> THE COURT: And is it your desire to testify or is it your desire to exercise your right to remain silent.
>
> THE DEFENDANT: Remain silent. (Tr. 251-52.)

*State v.Davis, supra,* at *5.

Obviously, petitioner cannot argue that counsel failed to call him despite his desire to testify. Rather, his claim, as articulated in his appellate brief (*Return of Writ,* Exhibit Eight ), appears to be that "Appellant discussed this matter with Public Defender and firmly believed that his testimony would have made a serious difference in the way the Jury perceived the circumstances of the case." However, the record does not contain any evidence of exactly what he discussed with counsel, any advice counsel may have given him, or why, in the context of petitioner's prior convictions for burglary and other felony offenses, any such advice was flawed. Given the fact that he waived the right to testify on the record, and further given the fact that if he did rely on advice of counsel in doing so, there is no evidence about why counsel may have been

15

ineffective in advising him on this subject, this claim is completely unsupported and without merit. The state court of appeals did not act unreasonably when it reached that conclusion. *Cf. United States v. Walker*, 2000 WL 378532, *7 (E.D. Pa. April 4, 2000)("electing not to testify in light of impending impeachment via introduction of evidence of past criminal activity is wise trial strategy and certainly on its face, well within the range of reasonable conduct, within prevailing professional norms for defense counsel").

## IV. CONCLUSION

The Court has concluded the state court did not unreasonably deny petitioner relief on the ground that his trial counsel was constitutionally ineffective. For that reason, it is recommended that the petition for a writ of habeas corpus be denied and that this case be dismissed.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this

matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge